IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RODNEY MINCHUE**                                                                          **PLAINTIFF**
**ADC #175929**

V.                             NO. 4:24-cv-00205-KGB-ERE

**MATHIAS IVERY**                                                                            **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommendation has been sent to United States District Chief Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Chief Judge Baker can adopt this Recommendation without independently reviewing the record.

**II.    Background:**

*Pro se* plaintiff Rodney Minchue, an Arkansas Division of Correction ("ADC") inmate at the Tucker Unit, filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc. 2*. Mr. Minchue's complaint alleges that, on one occasion, Defendant Ivery used excessive force against him resulting in injury. Mr. Minchue sued

Defendant Ivery in both his individual and official capacity seeking only money damages.[1]

Defendant Ivery has now filed a motion for summary judgment, statement of facts, and brief in support. *Docs. 40, 41, 42*. Mr. Michue has responded to Defendant Ivery's motion (*Docs. 48, 49*), and the motion is now ripe for review.

For the reasons stated below, I recommend that Defendant Ivery's motion for summary judgment be granted.

### III. Discussion:

#### A. Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for

---

[1] On March 5, 2024, I recommended that Mr. Minchue's claims for money damages against Defendant Ivery in his official capacity be dismissed, without prejudice, based on his failure to state a plausible constitutional claim for relief. *Doc. 5*. That Recommendation remains pending.

trial. *See* FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if – but only if – the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. *See* FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

   B.   **Defendant Ivery's Version of Events**

On September 29, 2023, at approximately 3:07 a.m., Defendant Ivery was conducting a routine pat-down search of inmates at the Tucker Unit's East Gate in front of the chow hall exit. *Doc. 40-3 at 1*. At that time, Mr. Minchue exited the chow hall and assumed the standard position to be searched by Defendant Ivery by turning his back towards Defendant Ivery and extending his arms in a t-shaped position. *Doc. 40-2 at 14*; *Doc. 40-1 at 3:07:35*. While Defendant Ivery conducted the pat-down search, Mr. Minchue's left arm swung backwards causing his left hand to swipe Defendant Ivery's face. *Doc. 40-3 at 1*. Feeling threatened, Defendant Ivery reacted by raising his right arm to guard his face and pushed Mr. Minchue forward. *Id. at 2*. Defendant Ivery then grabbed Mr. Minchue around the waist before releasing him as Mr. Minchue fell to the floor. *Id*.

   C.   **Mr. Minchue's Version of Events**

Contrary to Defendant Ivery's version of events, Mr. Minchue testified in this deposition that, following the pat down search, Defendant Ivery "grabbed me and

slammed me up against the wall, and slammed me on the ground."[2] *Doc. 40-2 at 13*. Mr. Minchue claims that Defendant Ivery "attacked him from behind." *Id. at 15*.

Mr. Minchue testified that, following the incident, officers escorted Mr. Minchue to the infirmary where a nurse took his blood pressure. *Id. at 38*. She provided Mr. Minchue blood pressure medication before sending him back to his building. *Id*. During his deposition, Mr. Minchue was asked generally what happened when he went to the infirmary. He only mentioned that the nurse took his blood pressure (*Id. at 38*) and took a photograph of his knee (*Id. at 15*). While Mr. Minchue was not specifically asked whether he suffered any injury as a result of Defendant Ivery's conduct, his deposition testimony suggests that such injury, if it occurred, was not significant.

### D.     Undisputed Video and Medical Evidence

The video evidence of the underlying incident corroborates Defendant Ivery's version of events. *Doc. 40-1*. The video shows that while Defendant Ivery was lifting Mr. Minchue's pant leg, Mr. Minchue's left arm swung backwards and his left hand made contact with Defendant Ivery's face. *Id. at 3:07:37*. In response, Defendant Ivery raised his arm to shield his face. *Id. at 3:07:38*. Mr. Minchue then appears to

---

[2] Although Mr. Minchue initially testified that this incident took place on September 30, 2022 (*Doc. 40-2 at 14*), according to the video recording, the incident actually occurred on September 29, 2023 (*Id. at 18*). Mr. Minchue later acknowledged that he was incorrect about the year that this incident occurred. *Id. at 43*.

fall or lean forward. *Id*. While Mr. Minchue is bent over, Defendant Ivery grabs Mr. Minchue around the waist. *Id. at 3:07:39*. Defendant Ivery then releases Mr. Minbchue using some force and he falls to the floor. *Id. at 3:07:40*.

Following the incident, medical personnel examined Mr. Minchue. *Doc. 40-4*. Mr. Minchue's medical records indicate that he was examined "after being body slam[med] by officer." However, it is unclear who provided this description of the incident. *Id. at 1*. Medical staff noted "visible deformity" to his right knee and pain in his right knee.[3] *Id. at 2*.

E.   **Qualified Immunity as to Individual Capacity Claim**

Defendant Ivery asserts qualified immunity on Mr. Minchue's excessive force claim against him. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time

---

[3] During his deposition, Mr. Minchue testified that, due to a prior leg injury, he "ain't got no balance on that right leg" and, if he puts any pressure on his right leg, he will "fall on [his] face." *Doc. 40-2 at 42-43*. The record is undisputed that Mr. Minchue's right knee was injured before this fall and that it contributed to him losing his balance.

5

of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

To prevail on his Eighth Amendment excessive-force claim, Mr. Minchue must demonstrate that Defendant Ivery used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*. "The word 'sadistically' is not surplusage; 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted).

In evaluating whether the force employed by Defendant Ivery was a good-faith effort to restore order, factors to consider include: (1) the objective need for the force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by Defendant Ivery; (4) any efforts made by Defendant Ivery to temper the severity of his response; and (5) the extent of Mr. Minchue's

6

injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

"Even where the force is unjustified, not every push or shove violates the Constitution, but any use of force greater than de minimis, or any use of force that is repugnant to the conscience of mankind, does." *Burt v. Nurse R.N.*, No. 4:19-cv-00040-SMR-CFB, 2019 WL 8752341, *2 (S.D. Iowa Mar. 27, 2019) (cleaned up) (citing *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)).

Based on the undisputed evidence, Defendant Ivery, by grabbing Mr. Minchue around his waist, then releasing him to the floor, used a de minimis amount of force in a situation where Defendant Ivery believed that some use of force was necessary to control Mr. Minchue, who had just made contact with his face.

In addition, Mr. Minchue fails to present any evidence suggesting that Defendant Ivery acted maliciously and sadistically to cause harm or that Defendant Ivery's conduct was "repugnant to the conscience of mankind." *Webster v. Saint Louis Cnty.*, No. 24-1127, 2025 WL 1187171, at *1 (8th Cir. Apr. 24, 2025); *Jackson v. Gutzmer*, 866 F.3d 969 (8th Cir. 2017).

Finally, the video recording of the incident directly contradicts Mr. Minchue's allegation that Defendant Ivery "grabbed me and slammed me up against the wall, and slammed me on the ground." *Doc. 40-2 at 13*. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

7

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). See also *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (holding, in an excessive force case, defendants were entitled to summary judgment because the plaintiff's "self-serving" allegations were "blatantly contradicted by the record" such that "no reasonable jury could believe them").

Although Defendant Ivery may have used some force when releasing Mr. Minchue to the ground, such conduct was "not so inherently dangerous that every reasonable officer should have anticipated that [his] action was likely to cause injury." *Webster*, 2025 WL 1187171, at *2.

On this record, no reasonable fact-finder could find that Defendant Ivery maliciously and sadistically used excessive force against Mr. Minchue on September 29, 2023. See *Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023) (granting qualified immunity when officers held down a resisting prisoner for a short time so that they could restrain him); *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) (granting qualified immunity when there was no "specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive").

As a result, Defendant Ivery is entitled to qualified immunity on Mr. Minchue's excessive force claim.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Ivery's motion for summary judgment (*Doc. 40*) be GRANTED.

2. Judgment as a matter of law be granted in Defendant Ivery's favor and Mr. Michue's claims against Defendant Ivery be DISMISSED, with prejudice.

3. The Clerk be instructed to close this case.

DATED 28 April 2025.

_____
UNITED STATES MAGISTRATE JUDGE